IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

TARA J. DRAUGHN,

                Plaintiff,

v.                                                              CIVIL ACTION NO.  3:23-0073

ST. MARY'S MEDICAL CENTER, INC.,
d/b/a St. Mary's Emergency Department,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant St. Mary's Medical Center, Inc.'s Motion for Partial Dismissal of Plaintiff's First Amended Complaint. ECF No. 8. For the reasons below, the Defendant's motion is **GRANTED**, and Count III of Plaintiff's First Amended Complaint is **DISMISSED**.

**BACKGROUND**

According to the First Amended Complaint, Plaintiff Tara J. Draughn, a registered nurse, started her employment with Defendant St. Mary's Medical Center in or around August of 2019. First Am. Compl. ¶ 4, ECF No. 1-1.

Shortly after being hired, "she began experiencing voice loss due to her neurological disease, Laryngeal Dystonia Abductors." *Id.* at ¶ 6. By February of 2021, Plaintiff "began having difficulty speaking," and her doctor sent the Defendant a letter requesting that Plaintiff be provided with "a reasonable accommodation," such as secure instant messaging. *Id.* at ¶¶ 7–8.[1]

---

[1] Plaintiff asserts that the Defendant had "text to voice communication devices" on site that could have been used to reasonably accommodate Plaintiff's disability and allow her to continue working in the Emergency Department. *Id.* at ¶ 9.

Around this time, Plaintiff applied for a Nurse Practitioner position with the Defendant, for which she was "more than qualified," but the position was awarded to a less qualified candidate without a disability. *Id.* at ¶ 10. Thereafter, Plaintiff applied for a Nurse Management position in the Emergency Department, but, once again, the position was given to a less qualified, non-disabled candidate. *Id.* at ¶ 12.

On March 2, 2021, the Defendant informed Plaintiff that she was "not to return to work because she could not use her voice." *Id.* at ¶ 14. Plaintiff once more requested an accommodation and informed her manager "that she would do any work that she could." *Id.*

The following day, Plaintiff attended a meeting with the Defendant's HR Director, Chris Mokas, wherein she requested, for the third time, a reasonable accommodation so that she could continue working. *Id.* at ¶ 15. However, on March 22, 2021, Plaintiff received an official letter stating that the Defendant was unable to accommodate her in the Emergency Department and that "her job would be posted." *Id.* at ¶ 17. At the time she received this communication, Plaintiff was on Family Medical Leave Act leave, and her employment was not terminated. *Id.* at ¶¶ 16–17.

Yet again, Plaintiff sought an accommodation, but "Mr. Mokas told her that the institution is not big enough to accommodate people with disabilities," and that the Defendant does "not hire nor continue employment of individual with disabilities." *Id.* at ¶¶ 18–19.

On May 7, 2021, Plaintiff realized that she stopped receiving disability benefits and discovered that the Defendant had "wrongly changed her employment status to 'resigned.'" *Id.* at ¶ 20. After contacting the Defendant's Benefits Coordinator, Plaintiff received an email from Mr. Mokas stating, "Your termination was put in error and has been corrected today." *Id.* at ¶¶ 21–22.

Plaintiff communicated with Mr. Mokas regarding her employment status on July 7, 2021 and asked for recommendations for other jobs with the Defendant for which she could apply. *Id.* at ¶¶ 23–24. On July 9, 2021, Mr. Mokas responded stating,

> I have looked through all the nursing openings we have with our CNO Libby Bosley and we don't see any vacant position where you wouldn't need your voice . . . with your FMLA expiring and no open positions that would meet your requirements, unfortunately we will need to move forward with your termination.

*Id.* at ¶ 25.

One month later, Plaintiff was terminated. *Id.* at ¶ 26. Mr. Mokas sent Plaintiff an email stating, "You are obviously eligible for rehire and if there are any positions that come open in [Mountain Health Network] that you feel you qualify for, I would encourage you to apply." *Id.* at ¶ 27. At the time of her termination, Plaintiff "did not have a single write up or reprimand." *Id.* at ¶ 26.

On December 4, 2022, Plaintiff filed suit in Cabell County Circuit Court. Plaintiff amended her complaint in state court on January 4, 2023, and the civil action was removed to this Court on January 30, 2023. The First Amended Complaint asserts claims of disability discrimination under the West Virginia Human Rights Act, a violation of the Employee Retirement Income Security Act of 1974, and a claim for the state law tort of intentional infliction of emotional distress.

In its Motion for Partial Dismissal, the Defendant challenges only Plaintiff's claim for intentional infliction of emotional distress.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained

in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## ANALYSIS

To state a claim for the tort of intentional infliction of emotional distress or "outrage," a plaintiff must plausibly allege:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

The Supreme Court of Appeals of West Virginia has explained that an employment discrimination claim can lead to separate actions for wrongful discharge and the tort of outrage. *Dzinglski v. Weirton Steel Corp.*, 445 S.E.2d 219, 225–26 (W. Va. 1994). A wrongful discharge claim "involve[s] the employment discrimination itself," whereas the tort of outrage "involve[s] the outrageous manner in which the discrimination . . . was implemented," for example, through "frequent public ridicule, incessant verbal abuse, threats and intimidations." *Id.* (citation and internal quotation marks omitted).

The Supreme Court of Appeals explained further:

> The prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: *when the employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach.* When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage. In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge. Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

*Id.* at Syl. Pt. 2 (emphasis added).

Accordingly, in order to plead a claim for intentional infliction of emotional distress arising from her termination, Plaintiff must plausibly show that the Defendant acted outrageously in how it carried out the termination, not simply that a discriminatory termination occurred. *Id.* She must also plausibly allege her distress resulted from "the outrageous manner" by which the Defendant terminated her employment. *Id.* Distress resulting from the termination itself does not support the outrage claim. *Id.*; *compare Hosaflook v. Consolidation Coal Co.*, 497 S.E.2d 174, 185 (W. Va. 1997) *with Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183 (W. Va. 2010).

Here, the Court finds the Plaintiff has not plausibly alleged that the Defendant effected her discharge in an outrageous manner. In fact, the First Amended Complaint provides very little detail about her how September 9, 2021, termination was carried out other than noting that Plaintiff received an email from Mr. Mokas informing her that she was "obviously eligible for rehire" and that he encouraged her to apply for future positions. *See* First Am. Compl. ¶ 27. This email does not allow the Court to draw a reasonable inference that the Defendant terminated Plaintiff in an outrageous manner.

Moreover, Plaintiff cannot rely on Mokas's alleged comments that the Defendant "is not big enough to accommodate people with disabilities" and does "not hire nor continue employment of individuals with disabilities" to support her intentional infliction of emotional distress claim. *See* Pl's Resp. in Opp. 1, 7. Those comments were made nearly six months prior to Plaintiff's termination and go to "validity of the employer's motivation or reason for the discharge," not the manner in which the discharge was effectuated. *See* Syl. Pt. 2, *Dzinglski,* 445 S.E.2d at 220.

At bottom, tort of intentional infliction of emotional distress requires Plaintiff to show that the Defendant acted outrageously in its handling of the allegedly discriminatory discharge. Inasmuch as Plaintiff does not allege that she was "singled out, embarrassed, threatened, verbally abused, ridiculed or humiliated" beyond what an employee would typically experience when being terminated from her employment, the Court concludes that Plaintiff has failed to state a claim for intentional infliction of emotional distress under West Virginia law. *See Hosaflook*, 497 S.E.2d at 185.[2]

---

[2] In her responsive memorandum, Plaintiff includes an alternative request to amend her complaint to allege additional facts to support her intentional infliction of emotional distress claim. Pl's Resp. in Opp. 12. The Defendant avers that any such amendment would be futile. Def.'s Reply 10–12.

The Court cannot assess the propriety of amendment without knowing what additional facts Plaintiff believes support her claim. Accordingly, Plaintiff may move to amend the Complaint, and the Court will address her request at that time. The Court cautions Plaintiff that a motion for leave to amend will not be granted if the proposed amendments do not sufficiently allege that the *manner* or *effectuation* of Plaintiff's discharge were truly outrageous in nature and that the resulting distress was due to the Defendant's outrageous conduct rather than the discriminatory discharge.

**CONCLUSION**

Accordingly, Defendant St. Mary's Medical Center, Inc.'s Motion for Partial Dismissal of Plaintiff's First Amended Complaint (ECF No. 8) is **GRANTED,** and Count III of Plaintiff's First Amended Complaint is **DISMISSED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: October 10, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE